MEMORANDUM OF LAW

IN SUPPORT OF PETITION

FOR WRIT OF HABEAS CORPUS

IN CIVIL ACTION No. H-20-2278

CASTRO V. LUMPKIN

United States Courts
Southern District of Texas
FILED

NOV 19 2020

David J. Bradley, Clerk of Court

PRO   SE

PETITIONER

KEVIN CASTRO

12071 FM 3522

ABILENE, TEXAS

79601

## TABLE OF CONTENTS

| CONTENT | PAGE NO. |
|---|---|
| Table of Authorities . . . . . . . . . . . . . | ii-iii |
| Jurisdiction . . . . . . . . . . . . . | 1 |
| Statute of Limitations : AEDPA . . . . . . . . . . | 2 |
| Statute of Limitations : AEDPA - Alternative Argument . . . . . . | 6 |
| Exhaustion Requirement 28 USC 2254 (b) . . . . . . . | 7 |
| Standard of Review : AEDPA or DE NOVO . . . . . . . . | 8 |
| Statement of Facts . . . . . . . . . . . . | 10 |
| Argument . . . . . . . . . . . . . . . | 11 |
| Ground One . . . . . . . . . . . . . . | 11 |
| Ground Two . . . . . . . , . . . . . | 13 |
| Ground Three . . . . . . . . . . . . . | 14 |
| Ground Four . . . . . . . . . . . . . | 16 |
| Ground Five . . . . . . . . . . . . . | 18 |
| Ground Six . . . . . . . . . . . . . | 20 |
| Conclusion . . . . . . . . . . . . . . | 21 |
| Prayer . . . . . . . . . . . . . . . | 22 |
| Certificate of Service . . . . . . . . . . . . | 23 |
| Verification . . . . . . . . . . . . . . | 23 |

## INDEX OF AUTHORITIES

AUTHOITY                                          PAGE No(s).

**U.S. CONSTITUTION**
IV. Amendment          .   .   .   .   .   .   .   .   .   .   .   .   .   .   12
VI. Amendment          .            .            .                          11,
UNITED STATES CODE
28 USC § 2244(d)(1)    .   .   .   .   .   .   .   .   .   .   .        2    8
28 USC § 2254 (a)                   .   .   .   .   .   .   .   .   .   i ,  2
          " (b)                 .                                           7
28 USC § 1746             .   .   .   .       .   .   .   .   .   .   .      23
**SUPREME COURT**
Arizona v. Gant        .   .   .   .   .   .   .   .   .   .   .   .   .     12
Artuz v. Bennett       .   .   .   .   .   .   .   .   .   .   .   .   .    5,7
Colorado v. Bertine    .   .   .   .   .   .   .   .   .   .   .   .   .     12
Cone v. Bell       .   .   .   .   .   .   .   .   .   .   .   .   .   .      8
Ex Parte Watkins       .   .   .   .   .   .   .   .   .   .   .   .   .      1
Giglio         .   .   .   .   .   .   .   .   .   .   .   .   .   .   .     21
Keeney v. Tamayo-Reyes     .   .   .   .   .   .   .   .   .   .   .   .      8
Kimmelman v. Morrison  .   .   .   .   .   .   .   .   .   .   .             12
Perry v. N.H.          .   .   .   .   .   .   .   .   .   .   .   .   .     14
Simmons v. United States   .   .   .   .   .   .   .   .   .   .   .      14,17
Stovall v. Denno       .   .   .   .   .   .   .   .            .          3 16
Strickland v. Washington   .   .       .   .   .   .   .   .   .   .      11,20
Wiggins v. Smith       .   .   .   .   .   .   .   .   .   .   .   .     .19,20
**5th Cir.**
Bryan v. Scott     .   .   .   .   .   .        .   .   .   .   .   .       19
Henderson v. Cockrell  .   .   .   .   .   .   .   .   .   .   .   .   .      9
Hutson v. Quarterman   .   .   .   .   .   .   .   .   .   .   .   .   .      2
Jones v. Jones     .   .   .   .   .   .   .   .   .   .   .                 9
Miller v. Johnson  .            .   .   .   .   .   .   .   .   .   .        9
Neal v Puckett         .   .   .   .   .   .   .   .   .   .   .   .         9

<u>INDEX OF AUTHORITIES CONTINUED</u>

<u>authity</u>                                                    <u>page no.(s)</u>

Nobles v. Johnson   .   .   .   .   .   .   .   .   .   .   .   .   21

Ridgway v. Baker   .   .   .   .   .   .   .   .   .   .   .   .   8

Roberts v. Cockrell   .   .   .   .   .   .   .   .   .   .   .   3

Scott v. Johnson   .   .   .   .   .   .   .   .   .   .   .   .   5

Villegas v. Johnson   .   .   .   .   .   .   .   .   .   .   .   7

<u>FEDERAL LAW REVIEW ARTICLE</u>

Daivid W. Louisell and Christopher B. Mueller

Federal Evidence § 489   .   .   .   .   .   .   .   .   .   16

<u>TEXAS CODE CRIMINAL APPEALS PROCEDURE</u>

art. 11.07 § 3(a)   .   .   .   .   .   .   .   .   .   .   .   .   4,5,9

art. 11.07 § 4   .   .   .   .   .   .   .   .   .   .   .   .   6

<u>TEXAS RULES OF EVIDENCE</u>

Rule 803(24)   .   .   .   .   .   .   .   .   .   .   .   15

<u>TEXAS CIV.PRAC.&REM.</u>

§132.001 and §132.003   .   .   .   .   .   .   .   .   23

<u>TEXAS COURT OF CRIMINAL APPEALS</u>

Ex parte Bradley   .   .   .   .   .   .   .   .   .   .   .   19

Ex parte Golden   .   .   .   .   .   .   .   .   .   .   .   .   4

Ex parte Miles   .   .   .   .   .   .   .   .   .   .   .   .   14

Ex parte Thomas   ,   .   .   .   .   .   .   .   .   .   .   4

Ex parte Torres   .   .   .   .   .   .   .   .   .   .   .   6

Ex parte Welborn   .   .   .   .   .   .   .   .   .   .   .   18

<u>COURT OF CRMINAL APPEALS</u>

Ard v. State   .   .   .   .   .   .   .   .   .   .   .   .   .   4

Barley v. State   .   .   .   .   .   .   .   .   .   .   .   .   16

Davis v. State   .   .   .   .   .   .   .   .   .   .   .   .   15

Rose v. State   .   .   .   .   .   .   .   .   .   .   .   .   4

Thomas v. State   .   .   .   .   .   .   .   .   .   .   .   17

iii

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEVIN CASTRO, | § | |
| TDCJ# 1783002 | § | |
|    petitioner, | § | CIVIL ACTION No. H-20-2278 |
| | § | |
| VS | § | |
| | § | |
| LORIE DAVIS | § | |
|    Respondent | § | |

### MEMORANDUM IN SUPPORT OF
### PETITIONER'S PETITION UNDER 28 USC § 2254

NOW COMES Kevin Castro, Petitioner, with this Memorandum in Support of federal writ of habeas corpus under 28 USC § 2254. The Petitioner now shows the Court the following:

### JURISDICTION

The Petitioner's complaint is an attack on the validity of a conviction that has held the Petitioner in the unlawful custody of the Texas Department of Criminal Justice for well over 8 years. As far back as 1830, the Supreme Court has understood the stautory habeas corpus remedy available as "a writ of error, to examine the legailty of the committment" and to "liberate an individual from an unlawful imprisonment". See Ex Parte Watkins, 28 U.S. 193,202,203. The Petitioner now invokes the subject matter jurisdiction pursuant to 28 USC § 2254 (a): The Supreme Court, a Justice thereof, a Circuit Judge, or a District Court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgement of a state court only on the ground that he is in custody in violation of the Constitution or laws or teaties of the United States. The Petitioner does not rely exclusively on state or federal common law in support of the foregoing claim: [SIMPLY STATED]

    1) Trial counsel was ineffective for failing to move for the
       pre-trial suppression of all illegally obtained evidence.

    2) Trial counsel acted unreasonable in failing to suppress
       the impermissibly suggestive pre-trial line-up and photo-spread.

    3) Trial counsel was ineffective in failing to argue for the admission
       of co-defendant's Affidavit which exculpated Petitioner of robbery.

1 of 23

4) Trial counsel was ineffective in failing to object to the
victim's in-court identification as unreliable.

5) Trial counsel failed to investigate, discover, and mitigate
key and pertinent facts.

6) The state presented false evidence to secure its conviction.

## STATUE OF LIMITATIONS : AEDPA

28 USC § 2254 establishes a strict one-year period of limitaions for the filing
of a habeas corpus petition from the date on which the judgement and sentence of
a conviction becomes final from the completition of direct review. In the instant
application, the question of whether the Petitioner has filed the application for
habeas corpus relief within the time permitted by the AEDPA is a twofold inquiry.

* Did the Petitioner file the instant application within the limitation
period established by the AEDPA?

The Petitioner believes that he has avoided the untimely filing of said
petition for the following reasons:

By definition a properly filed application for "other collateral review"
suspends the AEDPA'S one-year limitations. The United States Court of Appeals for
the 5th Cir. concluded that a motion to test DNA evidence under Texas Code of
Criminal Procedure article 64 constitutes "other collateral review" and thus tolls
the AEDPA's one-year limitation under 28 USC § 2244 (d)(1). See Hutson v. Quarterman
508 F.3d 236. The 5th Cir. Court also found that the post-conviction DNA testing
of art. 64 tolled the limitations period for an additional year. Id. For this reason
the Petitioner now directs the Courts attention to the brief time-line of the
appeal history and filing dates closely related to the determination of timeliness.

| Date: | Event: |
|---|---|
| Feb 21, 2013 | Court of Appeals affirmed the judgment. |
| Sept. 11, 2013 | Texas Court of Crim. Appeals refused PDR. |
| Oct. 24, 2014 | 248th Dist. Crt. of Harris County appointed counsel to represent the Petitioner in art. 64 proceeding. |
| July 25, 2019 | Court of Appeals affirmed the 248th Dist. Court's order. |
| Nov. 20, 2019 | Texas Court of Crim. Appeals refused PDR (art. 64) |
| Apr. 6, 2020 | 248th Dist. Court recieved and filed state writ application (art11.07). |

2 of 23

| | |
|---|---|
| June 24, 2020 | Petitioner's petition for writ of habeas corpus pursuant to 28 USC § 2254 and motion requesting the federal court to stay and hold in abeyance the 'protective petition' were both placed in the TDCJ-ID Robertson Unit mail-box. |
| Aug. 28, 2020 | U.S. Dist. Crt. Judge Andrew S. Hanen issued ORDER GRANTING STAY AND ADIMINISTRATIVE CLOSURE PENDING EXHAUSTION OF REMEDIES IN STATE COURT-Civil Action No. H-20-2278. |
| Sept. 9, 2020 | Texas Court of Crim. Appeals dismissed without written order subsequent state writ application. |
| Oct. 8, 2020 | The Petitioner placed motion to reinstate writ of habeas corpus (Civil Action No.H-20-2278) in the TDCJ-ID Robertson Unit mail-box. |

      *        *        *        *        *        *        *

[1st Part]

    The Petitioner's direct appeal did not become final until 90 days after the Sept. 11, 2013 refusal of PDR which would be <u>Dec. 11, 2013.</u>

    Petitioner's (federal) writ for habeas corpus was due no later than Dec. 11, 2014.

    The Oct. 24, 2014 appointment of counsel for art. 64 of the Texas Code Criminal Procedure tolled the time periods of 28 USC § 2244.

    Petitioner's art. 64 DNA proceeding did not become final until 90 days after the Nov. 20, 2019 refusal of PDR related to said DNA proceeding, whcih would have been <u>Feb. 20, 2020.</u> See Roberts V. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003) (holding direct appeal terminates with the disposition of a petition for writ of certiorari to the United States Supreme Court or with the expiration of the deadline for filing such a petition).

    The AEDPA'S limitations period herein generally commenced to run the following day, i.e. on Feb. 21, 2020. The acceptance of Petitioner's state writ application by the 248th District Court was on April 6, 2020. The Petitioner understand the complexity of the timeliness of this federal petition and therefore begins with this explanation of why he believes the timeline was met.



[2nd Part]

The Petitioner filed two seperate state writ applications, WR-88,865-01 and WR-88,865-02, both of which will be addressed individually.

<u>WR-88,865-01</u>

The Texas Court of Criminal Appeals ("TCCA") denied with out a written order on the findings of the trial court without a hearing on Sept. 19, 2018. The Petitioner now argues WR-88,865-01 was mistakingly accepted by the TCCA while lacking jurisdiction. The Tex.Code.Crim.Proc. art.11.07§3(a) provides the explicit subject matter jurisdiction the TCCA hold when an application for writ of habeas corpus is filed after the final conviction. Given that Petitioner's art.64 DNA proceeding sought review of the judgement pursuant to which he is incarcerated by way of a "collateral inquiry" into the validity of said conviction, the TCCA did not possess jurisdiction to rule on WR-88,865-01. Petitioner's art.64 direct appeal (COA No.01-17-00858-CR) was pending before, during and after the TCCA's acceptance of WR-88,865-01. "Dismissal must occur when a court lacks jurisdiction over the case." Ex parte Golden, 991 SW2d 859,861(Tex.Crim.App.1999)(en banc). The interpretation of the word "must" appears to be mandatory. The Petitioner does not argue that the one-year time limit of the AEDPA was reset but that the felony conviction was no longer final. See Rose V. State, 198 SW3d 271,272(Tex. App.--San Antonio 2006)("A hearing on post-conviction DNA testing is a collateral attack on a judgement comparable to a habeas corpus proceeding."). Art.64 thus restored the pendency of the direct appeal because the conviction was again capable of modification. The Petitioner relies on the TCCA's precedent when the TCCA dismissed WR-58,788-02 in Ex parte Ard because a direct appeal was found to be pending. The direct appeal mentioned was a direct appeal pursuant to art.64.05 . See Ard V. State, 166 SW3d 387. Michael Charles Thomas also experienced a similar dilemma when the TCCA realized their previous denial of Thomas' first state writ was denied while his criminal appeals were still pending. In fact, Thomas' denial was later concluded not a ruling on the merits and thus allowed Thomas to pursue a subsequent petition for relief. See Ex parte Thomas, 953 SW2d 286. The Petitioner brought the complaint of the TCCA's lack of jurisdiction before the TCCA in two

4 of 23

seperate motions for reconsideration, both of which were denied and dismissed. In Artuz V. Bennett, 531 U.S. 4, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000) the Supreme Court held that a habeas petition filed in a court lacking jurisdiction to consider the application is not "properly filed", see id. at 9, (If "an application is erroneously accepted by the clerk of a court lacking jurisdiction it will be pending, but not properly filed.").

## WR-88,865-02

The Petitioner would like to first establish the following:

- Petitioner's federal writ was due no later than one-year after Dec. 11, 2013 which would be Dec. 11, 2014.
- When Petitioner was appointed counsel pursuant to art.64 on Oct. 24, 2014—
- 48 days were left to meet the AEDPA's limitations period.
- Once Petitioner's DNA proceeding under art.64 became final on Feb. 20, 2020— the AEDPA was no longer tolled. The remaining 48 days thus began to run.
- Petitioner's federal writ was due no later than April 9, 2020.
- Petitioner's state writ application was filed as shown by a file stamped date from the 248th District Crt.—Harris County on Apr. 6, 2020.

It is well established that a state application filed after federal limitation period has expired does not toll the limitations period. See Scott V. Johnson, 227 F.3d 260, 263(5th Cir. 2000). The Petitioner filed the second writ before the expration of the one-year limitation. The question now is:

* Did the Petitioner properly file WR-88,865-02?

The Petitioner argues that the second state application was in fact his first actual attempt to bite the apple, although the apple quickly vanished. For the reasons stated in the previous page(s), Petitioner's first writ should have been dismissed for want of jurisdiction. The TCCA dismissed Petitioner's second writ on the premise that a "final disposition" had occured within the first writ. This could not be further from the truth. Although the TCCA's subject matter jurisdiction is defined in art.11.07§3(a), the Texas Legislature clearly limited the TCCA's jurisdiction. Therefore even assuming – arguendo, that the TCCA did afford the first writ some level of review, the lack of jurisdiction should not be overlooked.

5 of 23

In the writ jurispudence, a 'denial' within the context of final disposition
signifies that the TCCA addressed and rejected the merits of a claim, yet in
determing the nature of a disposition, one must look beyond mere labels to the
substance of the action taken. See Ex parte Torres,943 SW2d at 472. Because Petitioner's
art.6405 appeal restored the pendency, as in the case of Ex Parte Ard, Petitioner's
conviction was not ripe for habeas review under art.11.07. The denial of WR-88,865-01
was improper, therefore making the adjudication on its merits the same. In effect
WR-88,865-02 should not have been dismissed pursuant to §4 of art.11.07. Because
of this sound reason Petitioner's second writ should be viewed as properly filed
and timely for purpose of 28 USC § 2244(d)(2)

-Alternative Argumenr-

        Without abandoning the previous argument (TCCA's lack of jurisdiction) the
Petitioner further argues that the second writ application, WR-88,865-02, although
dismissed as a subsequent writ, was still "properly filed". The state of Texas
has never placed an absolute time requirement on the filing of a state application
nor has there been restrictions on the number of writs permitted by a prisoner.
There is no Texas statutory scheme barring the filing of a successive petition
without the expressed judicial authorization. In fact, Texas law specifically
contemplates the filing of a successive application. The Texas Code of Criminal
Procedure allows the TCCA to grant relief in limited instances, notwithstanding
the filing of an earlier application. See Tex.Code.Crim.Proc. art.11.07(4), which
is a limitation on a Texas State Court's ability to grant relief on a successive
petition, as opposed to an absolute bar to the filing of such a petition. An
application is "filed" when it is delivered to and accepted by the appropriate
court officer for placement into the official record. Because the Petitioner met
the procedural filing requirements, WR-88,865-02 was "filed" in the 248th District
Court of Harris County on April 6, 2020. Unfortunately the TCCA dismissed WR-88,865-02
as a successive petition thaat did not fit into the exception, the Petitioner
argues that the dismissal is distinct from the refusal to accept the petition
for filing. Because the Supreme Court found that a "properly filed" petition can
still stand so long as the petition complied with the rules governing whether
an application for state post-conviction relief was recognized as such under state

7 of 23

Law, even though the claims contained in the petition were procedurally barred under state statutory provisions, see Artuz V. Bennett 531 U.S 4, 148 LEd 213, 121, S. Ct. 361. Therefore WR-88,865-02 was "properly filed". While a majority of courts have considered the issue of 'properly filed' applications the United States Court of Appeals for the 5th Circuit has refused to find that a successive state application or one containing procedurally barred claims to be per se improper. (In terms of filing). The Petitioner cautions this court from assuming an overly broad meaning of the term "properly filed". In Villegas V. Johnson the 5th Cir. held that Villegas' second petition, although dismissed as successive, was properly iled and thus tolled the applicable limitation period. See 1999 U.S. App. LEXIS at 9.

The bedrock of Petitioner's alternative argument is:

> **ARTUZ.** The court concluded that the question whether a petitioner has properly filed an application is quite seperate from the question whether the claims contained in the application are meritorious and free of procedural bar  121 S Ct  at 364.

## EXHAUSTION REQUIREMENT
## 28 USC § 2254 (b)

To satisfy the exhaustion requirement  the Petitioner must fairly present the substance of his federal claim to the highest state court. Although none of Petitioner's (6) six claims were ever adjudicated on its merits, the Petitioner did afford the state an opportunity to address these claims. The Petitioner filed two seperate motion for Reconsideration in responce to each of Petitioner's state writ application 'denial' and 'dismissal', both of which were denied and dismissed by the TCCA. The Petitioner understands that a federal review may be barred by the doctrine of procedural default, if and when, the petitioner fails to meet he state procedural requirements for presenting the federal claims in state court. Here the TCCA chose not to address Petitioner's claims. By simply choosing not to do so should not give the state carte blanche to set a doctrine of procedural default roadblock. The cause for the default are because:

> A) The TCCA did not hold jurisdiction when it ruled on Petitioner's first state writ, therefore making the disposition of said writ improper.
>
> B) Petitioner's second state writ was dismissed on the premise that the first writ recieved a final true disposition. adjudication.

7 & 23

At the present, the Petitioner does not have the right under the law of Texas, to raise by any available procedure, the claims presented. The Petitioner argues that he is not the first to encounter such headache. The exhaustion requirement is satisfied if the claim was raised on appeal by the petitioner even if the state court s failed to address the claim on the merits. [Ridway V. Baker, 720 F.2d 1409, 1412-1413 (5th Cir. 1983). Thus the Petitioner has exhausted state remedies even when the state court did not issue a valid written opinion, refused to grant review, and chose not to reach the merits of the claims under the guise of a procedural issue. The state certainly had the jurisdiction during the acceptance of WR-88,865-02 as well as a fair opportunity to address the claims. Without wishing to delay any further, the Petitioner filed a protective petition once the staate exposed their hand under Section 4.. The Petitioner also quickly filed an objection on the state's original answer. Please note the motions for reconsideration, before the TCCA, as evidence of an attempt to cure the cause of default. This left no other state corrective process to take, that would not have been inadequate and or futile. The Petitioner has thus showed diligent efforts in his attempt to provide the state a fair opportunity to act. See Keeney V. Tamayo-Reyes, 504 U.S. 1, 9-10 (1992)(absence of diligent efforts by petitioner to present evidence supporting claims in state court may bar petitioner from presenting evidence in federal habeas corpus proceedings).

The bedrock of Petitioner's exhaustion argument is :

> In regards to procedural default, the Supreme Court has emphasized that, under the doctrine of procedural default, "federal Court's will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgement". Cone V. Bell, 129 S.Ct.1769. - The TCCA's decisions were not permitted by Texas Law —

## STANDARD OF REVIEW : AEDPA OR DE NOVO

A quick review of the AEDPA's standard of review found in 28 USC § 2254(d) states, in short, that an application for a writ of habeas shall not be granted

8 of 23

with respect to any claim that was adjudicated on the merits in state court
proceedings... The Petitioner focuses on the adjudication aspect of the court's
decision. Fortunately or unfortunately, depending on ones perspective, the Petitioner
again is not the first to experience this headache. Because the TCCA did not
hold jurisdiction over Petitioner's first state writ while the TCCA made its ruling
, the disposition was in fact a disposal of Petitioner's claim for reasons unrelat-
ed to the merits, therefore making §4 a non-factor in addressing the Petitioner's
second state writ. Now it is true that the TCCA "denied" Petitioner's first state
writ on Sept. 10, 2018, without a written order. Ordinarily, a denial of relief
by the TCCA is sufficient to serve as adjudication on the merits of the claim.
See Miller V. Johnson, 200 F3d 274, 281 (5th Cir.). Here, it is clear that in
all actuality the TCCA's lack of jurisdiction can not produce a true disposition.
The TCCA's ruling was not in accordance with art.1107 of the Tex.Code.Crim.Proc.
Petitioner likewise does not dispute that the second writ was also never adjudica-
ted. The Petitioner remains firm in arguing the mere label of 'denial' and dis-
missal, in relation to 1st and 2nd writ, should be closely analyzed. See Neal
V. Puckett, 286 F3d 230,235(5th Cir. 2002)(explaining that, in federal habeas
corpus context, "adjudication 'on the mreits' is a term of art that refers to
whether a court's disposition of the case was substantive as opposed to procedural").
Although WR-88,865-01's disposition appears to be substantive-it is not.
Paraphrasing Abraham Lincoln; calling the tail a leg does not make the tail a leg.
Because none of Petitioner's claims were never adjudicated on the merits, the
alteernative would be to proceed with de novo review, without the benefit of the
AEDPA standard. See Henderson V. Cockrell, 333 F3d 592, 600-01 (5th Cir. 2003);
See also Jones V. Jones ,163 F3d 285, 299-300 (5th Cir. 1998)(applying de novo
standard of review to claims of ineffective assistance of counsel that were raised
in state court, but not adjudicated on the merits).

The bedrock of Petitioner's request for de novo review is :

> Because the state did not adjudicate WR-88,865-01 in compliance with the
> procedures outlined in art. 11.07 of the Tex.Code.Crim.Proc, in particular
> §3(a) which defines when the TCCA holds the subject matter jurisdiction
> to rule on an application, WR-88,865-01 did not recieve a true disposition.
> This in effect also left Petitioner's second writ without a true disposition.

9 of 23

## STATEMENT OF FACTS

For purpose of convenience, the Petitioner relies on the
Statement of Facts presented in the Memorandum of Law
in Support of Application for writ of habeas corpus in
WR_88,865-01 which was filed and served by electronic
delivery at da@dao.hctx.net on May 1, 2018 by the State
Counsel for Offenders-Teresa Dunsmore-Attorney for Applicant
and also the Statement of Facts presented in the Memoran-
dum of Law in Support of Application for writ of habeas
corpus in WR-88,865-02 which was filed with the 248th
District Court of Harris County on Apr.6, 2020.



*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *


" WITH THE COURT'S PERMISSION ".

10 of 23

## ARGUMENT

"In all criminal prosecutions, the accused shall enjoy the right to ... have the assissance of counsel for his defense." United States Constitution, Amend.VI. That right to assistance of counsel is the right to 'effective' assistance of counsel. Strickland v. Washington, 466 U.S. 668,686 (1984).

The Petitioner's trial counsel's performance was unreasonable and deficient in a number of ways and, if he had been represented by reasonably competent counsel, it is likely that there would have been a different outcome to his case. The Petitioner argues that he is confined by an illegal restraint as a result of the following violations of his federal constitution rights.

GROUND ONE: Trial counsel was ineffective for failing to move for the
             pretrial suppression of all illegaly obtained evidence.

Under de novo review the Ineffective Assistance of Counsel, IAC, should be reviewed under the 6th Amend., Strickland standard rather than under the deferential standard provided by the AEDPA.

After recieving a general broadcast detailing the possible suspects and the get-a-way vehicle reported to be involved in an armed robbery, HPD Officer Yanez, ("Yanez") observed a maroon Suburban at a gas station that matched the description. After seeing a large white male and a shorter hispanic male inside the gas station, Yanez waited to see if these two would approach the Suburban. The hispanic male, Petitioner, and the larger white male both entered the Suburban, with the Petitioner as the driver. Yanez followed the Suburban while reporting the direction of travel to dispatch. Being that Yanez was in an unmarked car Yanez requested several units to initiate a 'felony traffic stop' on the grounds that Yanez observed the Petitioner and the passenger failing to wear their seat-belts. The Petitioner was thus stopped and arrested for the seat-belt violation. It is at this moment, trial counsel acted unreasonable and ineffective by not having had a firm command of the facts and law governing the search of Petitioner's Suburban. The terminology favored at trial by Officer Yanez was that the search was conducted as an inventory search.

11 of 23

There was no other exception to the warrantless search. Yanez testified that
nothing  was in plain view and by placing the Petitioner under arrest for the seat-
belt  violation  a search incident to arrest exception addressed by Arizona v. Gant
was ruled out.

> Restrictions  on  habeas  corpus  review of Fourth Amendment claims held
> not  applicable  to  Sixth  Amendment claims that assistance of counsel
> was ineffective because of incompetent representation on Fourth Amen.
> issues. See Kimmelman v. Morrison, 477 U.S. 365, 10  S.Ct. 2574.

The  issue  here  is  squarely on trial counsel's failure to move to suppress
the  evidence  obtained  during  an 'inventory  search' that was anything but. The
Fourth  Amendment  of the United States Constitution protects people from unreason-
able  search  and  seizures. Based on the testimony of Yanez, the following excerpt
reveals  that  the  'inventory  search'  exception was invsalidated by Yanez acting
in  bad  faith. See Colorado V. Bertrine 479 U.S 367, 371, 107 S.Ct. 738,741 (1987)
(An inventory search may be invalidated by bad faith.).

Q.   Now, when you talk about processing the vehicle, what do you mean by that?
A.   Looking for evidence related to the crime.
Q.   And how do you do that?
A.   I gathered some gloves, some gloves that I - I didn't have any on me;
     so I got some plastic gloves. And I started processing the scene, meaning
     I started looking, getting a visual of inside the vehicle to see if there
     was any evidence related to the crime.  (3 RR 38-39).

The  inventory  search  was  clearly a fishing expedition motivated by 'looking for
evidence  related  to  the crime'. The behavior exhibited by Yanez has already been
held  to  be  a  violation  of one's 4th amend. right. See Florida V. Wells, 495 US
1,4,  110  S.Ct. 1632, 109 LEd 2d 1 (1990) ("an inventory search must not be a ruse
for  general  ruuaging in order to discover evidence."). Not only did trial counsel
fail  to move for suppression, but had he had a firm command of the fact that Yanez
very  own HPD Incident Report No. 11341221 , at page 13, reveals that Yanez actualy
did  not  conduct  the  inventory  search. "ONCE THE VEHICLE HAD BEEN PROCESSED FOR
EVIDENCE  IT  WAS  INVENTORY  [sic]  BY OFFICER HOOD" thus trial counsel would have
been  able to add weight on the cause for suppression. There is ansolutely no sound

12 of 23

Trial strategy for failing to move on such a meritorious motion to suppress, either based on the HPD Incident Report and/or the trial testimony of Yanez. As support of this, the Petitioner argues that trial counsel's feeble attempts to exclude the evidence seized during the 'inventory search' by simple objections were only proof that trial counsel understood the damaging affects the evidence held. Having thus established that the invalid inventory search produced a string of damaging evidence along with the invalidity of the search, the success rate of suppression was so high that trial counsel's reasonablenee is at a level of dificiency. The Petitioner now moves to the next prong of prejudice. The pistol was used to bolster the victim's testimony while also providing the 'deadly weapon' showing for the element of agg. robbery. The tax id card bearing the victim's name was used to link the Petitioner to the crime, another crucial element of agg. robbery-possession. The beige hat could be viewed as the only piece of evidence that is complicated to weigh, one moment it is a black cap, the next it is a brown caddy style hat. Nevertheless, minus the pistol and the tax id card, the hidsight permitted in determining the prejudice suffered by counsel's unreasonableness ranges from possible no bill, dismissal, plea-bargain, or evcen a not guilty verdict. Please note the show-up, line-up, and in-court identification are herein argued as all constitutionally problematic. Petitioner's right under the 6th amend. of the Const. was thus violated.

**GROUND TWO:** Trial counsel acted unreasonable in failing to suppress the impermissibly suggestive pre-trial line-up and photo-spread.

* First, was the pre-trial line-up impermissibly suggestive?

    The Petitioner requests this court to please look at the actual line-up video marked State's exhibit # 23, which shows the degree and nature of Petitioner's claim.

Trial counsel failed to suppress the horendous pre-trial line-up video the state intended, and very well did, show the jurors. By the victim's own testimony Ayala was shown the Petitioner at the scene of the arrest. (3 RR 112). The HPD Officers asked Ayala to make an identification as the Petitioner stood handcuffed alongside the second suspect while standing by the get-a-way vehicle. This 'show up' practice has long been settled. "The practice of showing suspects singly to persons for the purpose of identification, and not as part of a line-up, has been widely condemned." Stovall v. Denno, 388 US 293,302, 87 S.Ct 1967,1972 (1967). Whether a "show-up"

13 of 23

identification violates due process "depends on the totality of the circumstances surrounding it." id. Once again, the victim testified that while standing 50-56 feet away, Ayala was asked to identify the Petitioner as he stood in handcuffs, surrounded by police officers, next to the second alleged suspect, alongside the get-a-way vehicle.(3 RR 112-114). The TCCA has found that showing a suspect "handcuffed' and surrounded by police officers... essentially resulted in a one-on-one show-up" which is "arguably suggesstive in nature." Ex parte Miles, 359 SW3d 647,668(Tex.Crim.App.2012). Next the Petitioner was asked to participate in a live line-up which he refused. HPD Detective T. Adams, Adams, then grappled the Petitioner into a 'full-nelson' head-lock and forced the Petitioner to participate in the line-up. This is a text-book example of a suspect's will being overbourne by oppresive police conduct. Recent developments in the law and science of eye-witness identifiaca-tion have called into question many 'procedures of eye-witness identification' See Perry V. N.H. 132 S.Ct. 716 (Law enforcement's improper use of identifiaction procedu-res that are both "unecessary" and "suggestive" will violate due process of law.). Trial counsel had easy access to the knowledge of the existance of the line-up video referenced in the HPD Incident Report. The totality of the circumstances reflect the Petitioner's appearance was emphasized in a way that rendered the procedure or rather the practice as no HPD Policy exists that permits the behavior exhibited by Adams which resulted in an unduly suggestive outcome. See Simmons, 390 US at 383 (holding that a line up procedure is impermissaibly suggestive if one individual in the group is "in some way emphasized"). Trial counsel did not move for the suppre-ssion of the meritorious motion to block the line-up and show-up evidence, therefore the deficient prong has been met. The Petioner now moves to the prejudice prong. The high likelihood of winning the suppression of the line-up and the show-up would have left the Petitioner on high ground to negotiate a favorable plea, this is because the merits of the suppression would have had a great impact on the anticipated in-court identification, as they are inter-twined, one relying on the other. Minus the show-up and the line-up the inconsistancies of Ayala's testimomy would have been free from distractions. Petitioner's 6th amend. right promised by the federal Constitution was violated by counsel's performance.

<u>GROUND THREE:</u>    Trial counsel was ineffective in failing to arhue for the admission of co-defendant's affidavit which exculpated Petitioner of robbery.

14 of 23

In a notorized affidavit, Petitioner's sodefendant, Wilbanks, voluntarily swore the Petitioner "was not in anyway[sic] a participant in the agg[ravated] [r]obbery of Carlos Ayala." and that the Petitioner "was not present during the [r]obbery nor had any knowledge of the act." He named another person as the actual codefendant who had committed the robbery with him. Petitioner's attorney suggested to the trial court that he would not offer the affidavit due to its hearsay nature. (3 RR 72). However, the Rules of Criminal Evidence 803 (24) provides an exception to the hearsay rule for statements against penal interest:

> A statement which was at the time of its making so far
> contrary to the declarant's pecuniary or propietary
> interest, or so far tended to subject him to civil or
> criminal liability, or to render invalid a claim by him
> against another, or to make him an object of hatred,
> redicule, or disgrace, that a reasonable man in his position
> would not have made the statement unless he believed it
> to be true. A statement teding to expose the declarant to
> criminal liability is not admissable unless corroborating
> circumstances clearly indicate the trustworthiness of the
> statement.
> Davis V. State, 872 SW2d 743, 747 n.8 (Tex.Crim.App.1994)

The first inquiry is whether the statement tended to expose the declarant to criminal liability.id. Wilbanks' statement was from Sept. 26, 2011, well before the April 30, 2012 judgement of conviction. Therefore, he was exposing himself to criminal liability because the statement could have been used against him at his own trial.

Second, there must be corroborating circumstances, but "no definitive test exists by which to gauge the existance of corroborating circumstance for purposes of Rule 803(24)." Davis, 872 SW2d at 749. Instead a "number of factors may be considered, including "the existance of independent corroborating facts."id. In Petitioner's case, Ayala's failures to identify the Petitioner and the inconsisten- cies between the description of the Hispanic gun-man corroborate Wilbanks' statement the Petitioner was not present during the act. Trial counsel's abject failure to even try to argue for admission of the statement was a derogation of his duty

15 of 23

to his client. Trial counsel may not have found the affidavit great himself but "better reasoned decisions do not evaluate credibility of witnesses in determining admissibility of statement against interest." Davis, 872 SW2d at 749 citing DAVID W. LOUISELL AND CHRISTOPHER B. MUELLER, FEDERAL EVIDENCE § 489 at 1163-64 (1980). The trial court must be "careful not to engage in weighing of the cedibility of the in-court witness," a defendant is entitled to expect no less from his own attorney. id. The Petitioner was adamant in getting Wilbanks on the stand. Trial counsel's statement that he spoke with Wilbanks' attorney who told him that if he was called to testify then he would invoke the 5th is initself hearsay. Point-blank. Trial counsel danced around Petitioner's repeated request and demands that Wilbanks' be brought in. The proper thing to do would have been to bring Wilbanks in the court and while out-side of the presence of the jurors be made to state for the record if Wilbanks will indeed plead the 5th. Then hammer away with the affidavit by way of bill of exception for appeal pupose. In all the trial counsel's performance is becoming so deficient that it is clear the 6th amend. right to effective assistance of trial counsel was not provided to Petitioner.

GROUND FOUR: Trial counsel was ineffective in failing to object to the victim's in-court identification as unreliable.

The circumstances leading up to the in-court identification would have been a gusto for any competent attorney. For the reasons stated below, trial counsel was ineffective:

[A] pre-trial identification procedure may be so suggestive and conducive to mistaken identifiaction that subsequent and conductive use of that identifiacation at trial would deny the accused of due process of law.

Barley V. State, 906 SW2d 27, 32-33 (Tex.Crim.App. 1995)(citing Stovall V. Denno, 388 US 293, 87 S.Ct. 1967 (1967)).

The general purpose of the reliability determination is to ascertain whether the in-court identification "rested on an independent recollection of the witness

16 of 23

encounter with the perpetrator and was not influenced by any pre-trial identifica-
tion of the defendant that the witness made. Therefore, if the witness admits that
the in-court identification was influenced by impermissibly suggestive procedure,
in-court identification is inadmissible. See Thomas V. State 811 SW2d 201, 207
(Tex.App.Houston.1st Dist). Ayala's testimony reveals the following:

[State]      Q. And did you see this defendant one — as one of those people that
             they showed you through the window? ( referring to line-up)

[Ayala]      A Yes.

             3 RR 94-95.

Based on the HPD Incident Reprt # 113412211 at 19, after the live line-up failed
to produce a positive identification the HPD officers continued to press the victim
into making an identifaction of the robber. See also 3 RR 95-96.

When the state next questioned Ayala concerning the photo-spread the following
was revealed:

[State]      Q. Okay, and when they first showed it to you, did you identify
             the defendant in any of those pictures?

[Ayala]      A. At that instant, no.

             Q. And why didn't you — well, let me ask you this: Did you see
             the defendant in those pictures when they first showed you
             those pictures?

             A. Yes.

The Petitioner argues that Ayala recognized the defendant as simply the Petitioner,
not as the perpetrator because Ayal failed to identify, the now familiar face,
Petitioner as the gun-man. Having established the "out of court identification
procedure was impermissibly suggestive" (See Ground Two) the second step in
the analysis is "whether that suggestive procedure gave rise to a very substantial
likelihood of irreparable misidentification". Simmons V United States, 390 US 377,
88 S. Ct. 967 (1968). Given the totality of the circumstances-- with the variance
in Ayala's description of the Petitioner, the impermissible show up at the scene
of arrest, the repeated failure to identify the Petitioner, the placement of Petit-
ioner as the lone common denominator in the multiple-showing of Petitioner's face
and the full-nelson head-lock line-up that placed such emphasis on the Petitioner
that the influence and suggestibility produced on the victim's identification is
frightening. Adding to the suggestive nature of the pretrial line-up proceeding

17 q 23

, the trial record shows that, after the show-up and line-up but before the second showing of the phot-spread Ayala was told that the photo-spread contained the individual who had been arrested and who was suspected of commiting the robbery. Ayala admitted that, prior to viewing the second photo-spread, he was told that the police had arrested the Petitioner who was 'found' in possession of his property.

The trial revealed that a police detective showed Ayala his wallet and identification card, seized from the assailants, and told Ayala, "You need to show me who it is." (3 RR 120-121). It was after all of this that Ayala made the positive identification of the Petitioner. The in-court identification can not be held to be reliable. Apart from Ayala's identification, there is no other evidence connecting Petitioner to the offense. Trial counsel did not act reasonable in failing to attack and suppress to the in-court identification, thus violating Petitioner's 6th amend. right.

**GROUND FIVE:** Trial counsel failed to investigate, discover, and mitigate key and pertinent facts.

A criminal defense attorney must have a firm command of the facts as well as the governing law before he can render reasonable effective assistance of counsel see Ex parte Welborn 785, SW2d 391 (Tex.Crim.App. 1990). The Petitioner centers this argument on the surrounding facts concerning the wallet marked as states exh.31, ("wallet"). A supplemental HPD Incident Report No. 113412211 reflect the testimony of Officer Yanez that the wallet was found empty on the possession of Wilbanks, yet an affidavit produced by Jessica Ehmann ("Ehmann"), a DPS Forensic Scientist, states that the victim's driver's license was found in the wallet. Furthermore, HPD Incident Report No. 110340411 shows a reliable factual history of Wilbanks owning not just a men's black wallet but the wallet in question. The Petitioner now begins Ground Five in 2 parts respectibly.

[Part One]    Trial counsel is responsible with conducting appropriate investigations, both factual and legal, to determine if matters of defense could be developed. In challenging trial counsel's failure to investigate, the Petitioner holds the burden of showing what an appropriate investigation would have revealed.

The Petitioner relies on Ehmann's affidavit the Petitioner submitted as attached exhibit @ in the Memorandum of Law in Support of [State] application for writ of habeas corpus ,WR-88,865-02, which reads "since there was, according to the HPD incident report a driver's license in the wallet that tied it to the victim and t

18 of 23

therefore to the crime." The apparent discrepencies between Ehmann's reference
to this HPD Incident Report No. Unknown and the Supplement HPD Incident Report
No. 113412211 callas into question the HPD practice in failing to adhere to HPD
Written Policy pertaining to Property/Evidence control, see General Order 700-01
attached as exhibit P in Memorandum of Law in Support of (state) Application-WR-
88,865-02. Section 1 of said General Order details the governing procedure: "Employee
will not convert to their own use, alter, conceal,falsify,...or withhold any property
held in connection with the investigation." This would have given the ammunition
for trial counsel to attack the faith in which HPD officers, namely Yanez, conducted
the beggining to end handling of the investigation. Poor sloppy police work with
a hint of shadiness. Why did Yanez not mention the victim's driver license was
"found in the wallet", and why does the HPD Supplement Report differ from Ehmann's
reference to HPD incident report. These questions are to near distortion of hind-
sight for the Petitioner to address, but what is clear is that trial counsel passed
on a beautiful opportunity to impeach and attack the out-side-the-policy practice
by Yanez and his police team. Proper investigation will also aid the trial counsel
indetermining if the state has conducted an adequate investigation and whether
its failure to do so has prejudice the defendant in any way. See Ex parte Bradley
981 SW2d 886,891 (Tex.Crim.App. 1989), state's investigation procedure can be so
improper it leads to denial of due process. The Petitioner suffered from trial
counsel's failure to investigate, discover, and mitigate the HPD incident report
referenced by Ehmann in Petitioner's post-conviction DNA proceeding. There could
be no reasonable trial strategy, given that "failure to investigate, which could
not be considered sound trial strategy because no 'strategy' can be formulated
until counsel has investigated the facts." See Bryan v. Scott , 28 F3d 1411,1419
(5th Cir. 1994) citing from Wiggins v. Smith, 123 S.Ct. 2527,2536, 156 L.Ed 2d
471 (2003). If the Petitioner may, the prejudice prong will be addressed shortly
as counsel's performance should be looked as a whole. Part Two of Ground Five is
thus a continuation of counsel's failure to investigate and mitigate factual evidence.

[Part Two]    The United States Supreme Court has held that "[s]trategic choices
                made after thorough investigation of law and facts relevant to
plausible options are virtually unchallengable; and strategic choices made after
less than complete investigation are reasonable precisely to the extent that reason-

19 of 23

able professional judgements support the limitations on ivestigation." Wiggins
v. Smith,539 U.S. 510,521, 123 S.Ct. 2527,2535, 156 L.Ed 2d 471 (2003)(quoting
Strickland, 466 U.S. 690-91, 104 S.Ct. at 2066). During the course of Petitioner's
arrest, the co-defendant, Wilbanks, was found to possess a black men's wallet.
The state presented the wallet as the nexus between Ayala's testimony and his
thruthfullness. The state even refered to the wallet as "luxury evidence" proving
the he [Petitioner] stole his [Ayala] wallet. The Petitioner's trial counsel did
not enter the trial with a firm command of the facts surrounding Wilbanks and
the wallet found on Wilbanks possession. HPD Incident Report No. 110340411, dated
seven days before the alleged Sept. 1, 2011 robbery of Ayala shows the following
facts:

· On Aug. 25, 2011 Wilbanks was himself a victim of theft, when his wallet was
  stolen from him.
· The wallet stolen was recovered and returned to Wilbanks by HPD Police.
· Marica Littlejohn was arrested and charged with theft.

See HPD Incident Report attached as exhibit 3 in Petitioner's Memorandum of Law
in Support of (state) Application-WR-88,865-02. Not only was Wilbanks known to
own and carry a black wallet but based on the trial record the search/investigation
revealed only one wallet, and the wallet found on Wilbanks should have been argued
by trial counsel as property belonging to Wilbanks and not Ayala. Marica Little-
john was arrested and held in the Harris County Jail for 60 days for stealing
Wilbanks wallet. See Littlejohn's Judgement of Sentence and Conviction attached
as exhibit 4 in Petitioner's Memorandum of Law in Support of (state) Application
WR-88,865-02. Trial counsel thus had every opportunity to equip himself with
the fact that Wilbanks had pre-existing history of owning a black wallet. The
Petitioner elected to be tried by jurors, and the jurors are the trier of facts,
yet trial counsel did not provide the jurors with these facts. The Petitioner
was not afforded effective assistance of counsel promised by the 6th amendment.
The wallet in question was displayed before the jury to bolst Ayala's credibility
and thrustworthiness, this was compounded by counsel's inaction that allowed the
admission of false evidence, see Ground Six.

<u>GROUND SIX:</u>  The state presented false evidence to secure its conviction.

To demonstrate a due process violation based on the state's knowing use of

20 of 23

False and/or misleading evidence, the Petitioner must show 1) the evidence was false, 2) the evidence was material, and 3) the state knew that the evidence was false. See Nobles v. Johnson, 127 F3d 409,415 (5th Cir. 1997)(citing Giglio, 405 U.S. at 153-54.

The Petitioner argues that the wallet presented at trial as being the wallet belonging to Ayala was not Ayala's wallet.

) The presentation of the wallet was false. Post-conviction DNA conducted by the DPS excluded the Petitioner as a possible contributor of the mixture of DNA ound on the wallet. The Petitioner understands the complexity of this issue and moved carefully to obtain the victim's DNA as a reference sample under the guise that eliminating the victim would thus solidify the false evidence argument. Yet he Petitioner is currently awaiting the results of Marica Littlejohn DNA from which to launch his attack. Having once establishing the DNA found on the wallet is a match to M. Littlejohn's DNA there could be little or no room to circumvent and deny that the state did in fact present false and misleading evidence when it presented the wallet as the wallet that the Petitioner stole from Ayala at gun-point on Sept, 1, 2011.

The Petitioner agrees that the court is not here to act as counsel or invest-igator, and with open mind, without abandoning this argument six, the Petitioner leaves this court with their sua sponte authority to do what they wish. The PETITIOn for writ of habeas corpus is a writ of right, the Great Writ is now in your hands.

## CONCLUSION

Petitioner did not recieve effective assistance of counsel under the 6th amendment, there is no sound reasonable trial strategy for counsel's repeated failures to act in the way any reasonable trial attorney would have. The presumpt-on of reasonableness has been chiped away, not by Petitioner's words but by counsel's actions. The Petitioner has been dilegent in his effort to remedy the unlawful conviction that holds him here. The conviction should not be allowed to stand. JUSTICIA

21 of 23

### P R A Y E R

The Petitioner prays that this Petition be granted and relief ordered that the Petitioner be released to the custody of the Harris County Sheriff Dep't to face the charges as indicted and charged. The Petitioner prays that whatever the outcome of this Petition the will of true justice be done and accepted with open arms.

/S/ CASTRO

22 g 23

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing Memorandum of Law in Support of Petitioner's 2254 Petition was served by placing same in the TDCJ-ID Robertson Unit mail box for delivery by the United States Mail, postage prepaid, on this 11th day of November 2020, addressed to:

Edward L. Marshall

Post-Conviction Litigation Division (Mail Code 066)

Post Office Box 12548, Capitol Station

Austin, Texas 78711-2548

/S/ Kevin Castro

Pro se K. Castro

Petitioner

## VERIFICATION

I, Kevin Castro, do hereby verify under penalty of perjury that the facts related in the foregoing Memorandum of Law are true and correct as understood by affiant.

Pursuant to Tex.Civ.Pract.&Rem.Code §§ 132.001-.003 et seq / Title 28 USC § 1746- A signed/dated copy of this pleading shall have the same validity as its original.

I attest to this by afixing my signature below:

Kevin Castro, pro se Petitioner

Enclosures

cc: David J. Bradley-Clerk

United States District Court

Suthern District

Post Office 61010

Houston, Texas 77208

Sent via U.S. mail.

(w/o Exhibits)

FR: Kevin Castro #1783002
Robertson Unit
12071 FM 3522
Abilene, TX 79601

United States Courts
S~ ~rict of Texas
ED
NOV 19 2020

David J. Bradley, Clerk of Court

To: David J. Bradley, Clerk
United States District Court
Southern District
Post Office Box 61010
Houston, Texas 77208





